1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RHETT WILKINS<br><br>                    Plaintiff,<br><br>v.<br><br>RAMIREZ, ET AL.<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 04cv00118-J (WMc)<br><br>**ORDER:**<br><br>**(1) ADOPTING IN PART MAGISTRATE JUDGE'S R&R [Doc. No. 31];**<br><br>**(2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 20];**<br><br>**(3) DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE [Doc. No. 20];**<br><br>**(4) DENYING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE [Doc. No. 30]; and**<br><br>**(5) CONSTRUING PLAINTIFF'S "MOTION TO DISMISS SUMMARY JUDGMENT" AS PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT [Doc. No. 30]** |

On January 16, 2004, Plaintiff Rhett Wilkins ("Plaintiff"), a state prisoner proceeding *pro se*, filed a Complaint with this Court alleging that prison officials violated his civil rights pursuant to 42 U.S.C. § 1983. [Doc. No. 1.] Before the Court are Defendants Ramirez et. al.'s ("Defendants") Motion for Summary Judgment and Motion to Strike. [Doc. No. 20.] Plaintiff

has filed an Opposition,[1] and Defendants have filed a Reply.  [Doc. Nos. 30, 28.]  Magistrate Judge William McCurine Jr. has filed a Report and Recommendation ("R&R") advising the Court to grant Defendants' Motion for Summary Judgment, to grant Defendants' Motion to Strike Plaintiff's punitive damages claim, and to deny Defendants' Request for Judicial Notice. [Doc. No. 31.]  Neither party has filed an Opposition to the R&R.  The Court reviewed the papers filed, determined that the issues presented were appropriate for decision without oral argument, and vacated the hearing date.  *See* S.D. Cal. Civ. R. 7 (2006).  For the reasons set forth below, the Court (1) **ADOPTS IN PART** the R&R, (2) **GRANTS** Defendants' Motion for Summary Judgment, (3) **DENIES without prejudice** Defendants' Motion to Strike, and (4) **DENIES** Defendants' Request for Judicial Notice.

*Background*

## I.  Plaintiff's Version of the Facts

Plaintiff is a state prisoner incarcerated at Richard J. Donavan Correctional Facility ("RJD") in San Diego, California.  (*See* German Decl. Ex. A at 3-4; *see also* Defs.' Mot. Summ. J. at 1.)  The alleged civil rights violations occurred on September 17, 2003, when the Correctional Treatment Center ("CTC") at RJD was evacuated for a fire drill.  (*See* Pl.'s Compl. at 7.)  Plaintiff states he was in the Central Plaza sitting on a cart watching the fire drill like he was instructed to do by Registered Nurse ("RN") Denason.  (*See id.*)  Defendant Correctional Officer ("C/O") Lyman-Clark called Plaintiff over to him and told Plaintiff to stop looking at the women participating in the fire drill.  (*See id.*)  C/O Lyman-Clark reprimanded Plaintiff and told

---

[1] Due to the liberal construction policy of pro se motions, the Court has an obligation to construe a pro se petition to the petitioner's advantage.  *See United States v. Seesing*, 234 F.3d 456, 463 (9th Cir. 2000); *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  Thus, although Petitioner entitled his filing as a "Motion to dismiss summary judgment," this Court **CONSTRUES** Plaintiff's papers as an Opposition to Defendants' Motion for Summary Judgment for Plaintiff's advantage.  [Doc. No. 30.] Plaintiff filed his papers on November 17, 2005, within the briefing schedule for filing an opposition, which was not due until November 21, 2005.  (*See* Order Extending Time at 3.)  Additionally, Plaintiff did not file any other papers in this time period that can be construed as an Opposition.  More importantly, Petitioner sets forth various arguments in his papers that strongly suggest he intended to oppose Defendants' Motion for Summary Judgment.  (*See* Pl.'s Opp'n at 7, 10.)

1   Plaintiff to go back to where he was sitting.  (*See id.*)  Shortly afterwards, C/O Lyman-Clark

2   again called Plaintiff over and reprimanded him for allegedly leering at the women.  (*See id.*)

3   Plaintiff asserts that he responded that he was not looking at the women, and told C/O Lyman-

4   Clark, he had "been working with them for 10 months, they don't mean anything to me, I have a

5   wife [and] kids."  (Pl.'s Compl. at 7.)

6       According to Plaintiff, this response angered C/O Lyman-Clark, who then told Plaintiff to

7   put his hands behind his back.  (*See* Pl.'s Compl. at 7.)  Plaintiff complied, and C/O Lyman-

8   Clark escorted Plaintiff about five feet, at which point Defendant C/O Bernal came over and

9   began escorting Plaintiff.  (*See id.*)

10       Plaintiff asserts that C/O Bernal suddenly threw Plaintiff on the ground and started

11   beating him for no apparent reason.  (*See* Pl.'s Compl. at 7.)  Plaintiff further alleges that

12   Defendants C/Os Diaz, Tablos-Espinoza, Lt. Shelar, Sgt. Beauchemin, and MTA Wilson, all

13   jumped on Plaintiff, beat him, and sprayed Oleresin Capsicum ("O.C.") spray his face.  (*See id.*)

14   Afterwards, Plaintiff claims that C/O Ramirez took him to the CTC, handcuffed his hands and

15   legs, and beat him.  (*See id.*)  Plaintiff states that he requested medical attention for his head

16   injury several times when he was in administrative segregation, and a doctor did not evaluate

17   him or take x-rays during the three months he was in segregation.  (*See* Pl.'s Compl. at 8.)

18       Plaintiff also points out that he was ultimately found "not guilty" for resisting staff and

19   battery.  The Rules Violation Report, which Plaintiff has provided as an exhibit, concludes that

20   Plaintiff is not guilty because "this incident was a result of Inmate WILKINS' mental health

21   condition, in that he was not taking his prescribed medications."  (Pl.'s Opp'n Ex. L.)

22       Finally, Plaintiff asserts that he made various 602-Inmate Appeal Requests, which were

23   not answered, and that staff refused to give him copies of the 837-Crime/Incident Reports.  (*See*

24   *id.*)

25   **II.  Defendants' Version of the Facts**

26       Defendants' version of events differs from Plaintiff's.  According to Defendants, C/O

27   Lyman-Clark repeatedly asked Plaintiff to stop leering and making lewd gestures, i.e., holding

28   his crotch, at the female staff conducting the fire drill.  (*See* Cob Decl. Ex. G at 20.)  Plaintiff's

1  alleged response was, "I'll do what the fuck I want to."  (Cobb Decl. Ex. G at 21.)  C/O Lyman-

2  Clark ordered Plaintiff to show his identification card, which Plaintiff refused to do.  (*See* Cobb

3  Decl. Ex. G at 21.)  When C/O Bernal observed the interaction between C/O Lyman-Clark and

4  Plaintiff, C/O Bernal told Plaintiff to place his hands behind his back.  (*See id.*)  C/O Bernal then

5  began to escort Plaintiff to the Watch Office.  (*See id.*)

6      According to Defendants, when C/O Bernal and Plaintiff approached the walkway in

7  front of the Watch Officer, Plaintiff began to resist and pulled free of C/O Bernal's grip.

8  Plaintiff then allegedly turned to strike C/O Bernal with his elbow.[2]  (*See id.*)  C/O Bernal

9  grabbed Plaintiff with both arms around his upper torso, and both men fell to the ground.  (*See*

10  *id.*)

11      At this point, Lt. Shelar and C/O Lyman-Clark responded to assist C/O Bernal.  (*See*

12  Cobb Decl. Ex A at 6.)  C/O Lyman-Clark tried to restrain Plaintiff by holding his right arm, but

13  Plaintiff grabbed C/O Lyman-Clark's right hand and squeezed and twisted his middle and ring

14  fingers.  (*See* Cobb Decl. at 21.)  Although C/O Lyman-Clark ordered Plaintiff to stop resisting,

15  Plaintiff continued to struggle.  (*See id.*)

16      Sgt. Beauchemin and C/O Wilson responded to the incident by placing leg restraints on

17  Plaintiff.  (*See* Cobb Decl. Ex. B at 12; Cobb Decl. Ex. C at 13-14 .)  At the same time, C/O

18  Diaz and C/O Tablas-Espinoza also approached to assist officers in placing handcuffs on

19  Plaintiff.  (*See* Cobb Decl. Ex. E at 18.)

20      While C/O Bernal was laying on Plaintiff to hold him still, Plaintiff allegedly bit C/O

21  Bernal's left arm.  (*See* Cobb Decl. Ex. B at 12; Cobb Decl. Ex. C at 13-14 .)  C/O Bernal yelled

22  out, "he's biting me!" and C/O Diaz administered a one second burst of O.C. spray in Plaintiff's

23  face.  (*See* Cobb Decl. Ex. E at 18.)  At C/O Lynman-Clark's request, C/O Diaz did not spray

24  Plaintiff again.  (*See* Cobb Decl. Ex. G at 24.)  Plaintiff stopped biting C/O Bernal, but continued

25

26

27      [2] As of August 29, 2005, C/O Bernal has not submitted an Incident Report due to him being on
an extended sick leave.  (*See* Cobb Decl. at 3.)  However, multiple Incident Reports confirm C/O

28  Bernal's presence during the incident described above.  (*See* Cobb Decl. Ex. A at 6; *see also* Cobb Decl.
Ex. G at 21.)

1  to resist until C/Os Shelar, Beauchemin, and Lyman-Clark handcuffed Plaintiff.  (*See* Cobb

2  Decl. Ex. A at 6.)

3      C/O Hobbs then escorted Plaintiff to the CTC for medical treatment and O.C. spray

4  decontamination.  (*See* Cobb Decl. Ex. H at 25.)  At CTC, RN Belger evaluated Plaintiff, finding

5  that he suffered an "abrasion on [the right] cheek, rib pain, [and a] small cut inside [his] lower

6  lip." (Cobb Decl. Ex. I at 26.)  C/O Skelton photographed Plaintiff's injuries.  (*See* Cobb Decl.

7  Ex. F at 19.)  After Plaintiff was evaluated, C/O Hobbs escorted Plaintiff to the administrative

8  segregation housing unit.  (*See* Cobb Decl. Ex. H at 25.)  Plaintiff received several subsequent

9  checkups where he complained about having headaches and was proscribed medication for his

10  injuries.  (*See generally* German Decl. Ex. B.)

11  **III.  Procedural History**

12      On January 16, 2004, Plaintiff filed a Complaint in this Court pursuant to the Civil Rights

13  Act, 42 U.S.C. § 1983, against Defendants C/O Bernal, C/O Diaz, C/O Lyman-Clark, C/O

14  Ramirez, C/O Tablos-Espinoza, Lt. Shelar, Sgt. Beauchemin, MTA Wilson, and Warden

15  Hernandez. [Doc. No. 1.]  Plaintiff in his Complaint alleges the following:  (1) Defendants

16  violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by

17  kicking and beating him, (2) Defendants violated Plaintiff's due process rights by not answering

18  his inmate appeal requests, and (3) Defendants violated Plaintiff's due process rights by not

19  addressing his serious medical needs.  (*See* Pl.'s Compl. at 2-5.)

20      On March 23, 2004, this Court granted Plaintiff's request to proceed *in forma paurperis*.

21  [Doc. No. 5.]  On October 29, 2004, Defendants filed their answer.  [Doc. No. 12.]  On January

22  21, 2005, Plaintiff requested appointment of counsel. [Doc. No. 15.]  Magistrate Judge

23  McCurine denied Plaintiff's request for appointment of counsel without prejudice on January 21,

24  2005, finding no exceptional circumstances warranting appointment of counsel. (*See* Order Den.

25  Appt. of Counsel at 2.)

26      On March 18, 2004, Defendants filed a complaint against Plaintiff in the Superior Court

27  of California, County of San Diego South County Division, claiming three counts of battery

28

stemming from the September 17, 2003, incident.  (Pl.'s Opp'n Ex. H at 3.)  The Superior Court dismissed the Complaint, apparently for "insufficiency of evidence."  (*Id.*)

On August 31, 2005, Defendants filed a Motion for Summary Judgment, a Motion to Strike Plaintiff's request for punitive damages, and a Request for Judicial Notice. [Doc. No. 19, 22.]  In support of their Motion for Summary Judgment, Defendants filed declarations by Deputy Attorney General Michael German and Lt. Robert Cobb along with multiple exhibits, including Incident Reports completed by Defendants and RJD Staff.  (*See* Defs.' Mot. Summ. J. at 2.)

On September 29, 2005, Plaintiff requested an extension of time to respond to Defendants' Motion for Summary Judgment, which the Court granted.  [Doc. Nos. 25, 26].  Additionally, the Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), which require that special notice be given to *pro se* prisoners that the defendant has moved for summary judgment. [Doc. No. 26.]  Plaintiff then filed an Opposition, and Defendants filed a Reply. [Doc. Nos. 28, 30.]

On January 17, 2006, Magistrate Judge McCurrine issued a R&R recommending that Defendants' Motion for Summary Judgment be granted, Defendants' Motion to Strike be granted, and Defendants' Request for Judicial Notice be denied without prejudice. [Doc. No. 31.] On February 9, 2006, Plaintiff filed a Motion to Extend Time to Object to the R&R.  [Doc. No. 33.]

On April 13, 2006, Plaintiff filed a Motion to Voluntarily Dismiss Plaintiff's case without prejudice. [Doc. No. 36.]   On April 18, 2006, this Court denied Plaintiff's Motion to Voluntarily dismiss, and granted Plaintiff's request for an extension until May 26, 2006, to file an Objection to the R&R.  [Doc. No. 37.] To date, Plaintiff has not filed any Objections to the R&R.

//

//

//

//

04CV00118-J (WMc)

*Legal Standard*

**I.  Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure on "all or any part" of a claim where there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (2006); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  *See id.* at 323-24.  A fact is material when, under the governing substantive law, the fact might affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if  "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When making its determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial.  *See id.* at 322-23.  If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets the initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  Thus, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 252); *see also Matsushita*, 475 U.S. at 586 (if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely

1   demonstrating "that there is some metaphysical doubt as to the material facts").  Moreover, it is

2   insufficient for the party opposing summary judgment to "rest upon the mere allegations or

3   denials of [his or her] pleading."  Fed. R. Civ. P. 56(e).  Rather, the party opposing summary

4   judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories,

5   and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "

6   *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56(e)).

7        Furthermore, a court is not obligated "to scour the records in search of a genuine issue of

8   triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined*

9   *Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).  "[T]he district court may limit its review to the

10  documents submitted for purposes of summary judgment and those parts of the record

11  specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026,

12  1030 (9th Cir. 2001).

13  **II.  Reviewing a Magistrate Judge's R&R**

14       In deciding a Motion for Summary Judgement in connection with a magistrate judge's

15  R&R, a district court must "make *de novo* determination of those portions of the report . . . to

16  which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or

17  recommendations made by the magistrate."  28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)

18  (2006); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing for a '*de*

19  *novo*' hearing, Congress intended to permit whatever reliance a district judge, in exercise of

20  sound discretion, chose to place on a magistrate's proposed findings and recommendations.")

21       When no objections are filed to the R&R, as is the case here, the district court may

22  assume the correctness of the magistrate judge's findings of fact and decide the motion based on

23  the applicable law.  *See Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974).  The

24  U.S. Court of Appeals for the Ninth Circuit has held that, under such circumstances, "a failure to

25  file objections only relieves the trial court of its burden to give *de novo* review to factual

26  findings; conclusions of law must still be reviewed *de novo*."  *Barilla v. Ervin*, 886 F.2d 1514,

27  1518 (9th Cir. 1989) (citing *Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir.

28

1983)), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996).

### *Discussion*

### I.  Defendants' Motion for Summary Judgment

Defendants have moved for Summary Judgment as to all of Plaintiff's claims based on the following arguments: (1) Plaintiff has provided no proof to support his Eighth Amendment excessive force claim; (2) Plaintiff cannot show Defendants were deliberately indifferent to Plaintiff's medical needs; (3) Plaintiff does not have a protected due process right in a prison grievance procedure; (4) Defendants have qualified immunity from Plaintiff's claims; and (5) Plaintiff has improperly named Warden Hernandez and C/O Ramirez as Defendants.  The Magistrate Judge in his R&R recommends granting summary judgment as to all of Plaintiff's claims.  (*See* R&R at 1.)  Plaintiff has not filed any objections to the R&R.  For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### A.  *Eighth Amendment Excessive Force Claim*

In the Motion for Summary Judgment, Defendants argue that Plaintiff cannot produce relevant, competent, and admissible evidence to prove that Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  (*See* Defs.' Mem. Supp. Mot. for Summ. J. at 5.)  Defendants also argue that as government officials, they have qualified immunity.  (*See id.* at 9.)  In response, Plaintiff asserts that he suffered a significant blow to the head and that "officers acted in a malicious and wanton fashion."  (*See* Pl.'s Opp'n at 7, 10.)  To support his argument, Plaintiff points to medical reports (*see* Pl.'s Opp'n Ex. I at 1; Defs.' Mot. Summ. J. Cobb Decl. Ex. I at 26), a not guilty finding for Plaintiff as stated in the Rules Violation Report CDC-115 (*see* Pl.'s Opp'n at 4, *see also* Pl.'s Opp'n Ex. G), and the dismissal of the criminal charges against Plaintiff for battery of the C/Os (*see* Pl.'s Opp'n Ex. H).  In addition, Plaintiff states that "a medical staff member alleged unnecessary and excessive force

1  was utilized by staff during this incident."[3]  (*See* Pl.'s Opp'n at 6, 11; Cobb Decl. Ex. P at 37;

2  Cobb Decl. Ex. Q at 48.)  For the reasons stated below, the Court **GRANTS** Defendants' Motion

3  for Summary Judgment as to Plaintiff's Eighth Amendment claim.

4          The Supreme Court in *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Whitley*, 475

5  U.S. at 320-21) held that the "settled rule [is] that 'the unnecessary and wanton infliction of pain

6  . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' "  The

7  relevant inquiry for determining whether prison officials accused of using excessive physical

8  force inflicted "unnecessary and wanton pain" is whether force was applied in a good faith effort

9  to maintain or restore discipline, or, instead, was applied maliciously and sadistically for the

10  very purpose of causing harm.  *See id.* at 6; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184

11  (9th Cir. 2003).  To determine whether the defendant's use of force was malicious and sadistic,

12  the *Hudson* Court laid out five factors derived from *Whitley v. Albers*, 475 U.S. 312 (1986), for

13  courts to consider:  (1) the extent of injury suffered by an inmate, (2) the need for application of

14  force, (3) the relationship between that need and the amount of force used, (4) the threat

15  reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity

16  of a forceful response.  *Hudson*, 503 U.S. at 7 (citing to *Whitley*, 475 U.S. at 321.)  In weighing

17  these factors, "[u]nless it appears that the evidence, viewed in the light most favorable to the

18  plaintiff, will support a reliable inference of wantonness in the infliction of pain under the

19  standard . . . the case should not go to the jury."  *See Whitley*, 475 U.S. at 322.

20          **1.  Extent of Injury**

21          "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the

22  use of force could plausibly have been thought necessary' in a particular situation, 'or instead

23  evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a

24  knowing willingness that it occur.' "  *Hudson,* 503 U.S. at 7.  Although the extent of a prisoner's

25  injury is relevant in determining whether excessive force was used in violation of the Eighth

26

27  _____

28          [3] Although Defendants address Plaintiff's argument about the two incident reports creating a
genuine issue of material fact in their Reply brief (*see* Defs.' Reply at 2), the R&R does not address this
evidence.  Thus, the Court reviews this evidence *de novo*.

Amendment, it is not decisive because a prisoner can state a claim even if he or she did not suffer a significant injury. *See id.* at 4. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 9. The standard for an excessive force constitutional violation depends on contemporary standards of decency. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident.")

Applying this rule, the *Hudson* Court held that there was an Eighth Amendment violation even though the prisoner's injuries were minor, consisting of "bruises, swelling, loosened teeth, and a cracked dental plate." *Id.* at 10. The Court based its holding on the prisoner having presented evidence weighing in favor of the other *Whitley* factors to show that the defendant officers acted maliciously and sadistically for the very purpose of causing the prisoner harm. *See id.; see also Martinez*, 323 F.3d at 1180 (holding that a prisoner, who suffered lacerations on his left leg and finger, an abrasion on his head, bruises, and red welts on his back, stated a claim under the Eighth Amendment because the prisoner provided evidence in support of the other *Whitley* factors).

Here, like the prisoners in *Hudson* and *Martinez*, Plaintiff's injuries stemming from the incident were relatively minor. RN W. Belger stated in her medical report, which was completed ten minutes after the altercation on September 17, 2003, that Plaintiff suffered an "abrasion on [the right] cheek, rib pain, [and a] small cut inside [his] lower lip." (Cobb Decl. Ex. I at 26.) Dr. Gomez evaluated Plaintiff, and prescribed Tylenol for Plaintiff's injuries. (*See* German Decl. Ex. B at 7.) As the Magistrate Judge found from reviewing the record, "subsequent visits by Plaintiff after the initial visit to the CTC show[ed] Plaintiff had no lingering head injury from the incident." (R&R at 14.)

However, viewing the facts in the light most favorable to Plaintiff, the evidence indicates that Plaintiff did suffer headaches after the incident. C/Os Shelar and Talbert noted in their Use of Force Incident Report that Plaintiff suffered a "[b]low to the head." (Cobb Decl. Ex. O at 34; Cobb Decl. Ex. P at 36.) As a result of the blow to his head, Plaintiff suffered from headaches

for three-months.  (*See* R&R at 14; German Decl. Ex. B at 12, 14-16.)  Medical documents submitted by Defendants' in support of their Motion for Summary Judgment show Plaintiff was treated for his complaints of headaches on September 26, 2003, October 6, 2003, and October 9, 2003.  (*See* R&R at 14; German Decl. Ex. B at 12, 14-15.)  On November 7, 2003, an optometrist also treated Plaintiff for chronic headaches.  (*See id.* at 16.)  However, Plaintiff's headaches were not permanent because on December 8, 2003, Dr. Hunt evaluated Plaintiff and reported that he exhibited no symptoms.  (*See id.* at 17.)

Although Plaintiff's injuries were not severe, he did suffer headaches for a three-month period.  Accordingly, the Court **FINDS** that viewed in the light most favorable to Plaintiff, this factor weighs slightly in Plaintiff's favor.  *See Hudson*, 503 U.S. at 10.

### 2. Need for Force

The Ninth Circuit has held that "the force that was applied must be balanced against the need for that force: it is the need for force which is at the heart of the [excessive force determination]."  *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994).  Where is no need for force, any force used is objectively unreasonable for constitutional purposes.  *See P.B. v. Koch*, 96 F.3d 1298, 1303-04 & n. 4 (9th Cir. 1996).

Here, there was a need for force because even viewing inferences in the light most favorable to Plaintiff, the facts show that Defendants exerted force to restrain Plaintiff, not to maliciously and sadistically inflict pain.  It is undisputed that a physical altercation resulted while C/O Bernal escorted Plaintiff from the Central Plaza to the Watch Tower office.  As the Magistrate Judge noted in his R&R, the incident reports consistently state that while C/O Bernal was escorting Plaintiff to the Watch Tower, Plaintiff began to struggle and allegedly turned to strike C/O Bernal.  (*See* R&R at 6-7.)  Moreover, Plaintiff does not dispute the following facts, which Defendants have supported with declarations:  the C/Os were trying to restrain him by handcuffing and shackling his arms and leg; C/O Bernal used his hands to grab Plaintiff around the torso area and bring him to the ground (*see* Cobb Decl. Ex. G at 21); Lt. Shelar and C/O Lyman-Clark grabbed and twisted Plaintiff's arm and hand (*see id.*); and Sgt. Beauchemin and C/O Wilson tried to put leg restraints on Plaintiff (*see* Cobb Decl. Ex. B at 12; Cobb Decl. Ex. C

at 13-14 ).  Thus, the facts undisputed by Plaintiff and supported by declarations submitted by

Defendants show that Defendants were exerting force to restrain Plaintiff.

In response to Defendants' argument that they were exerting force to restrain Plaintiff,

Plaintiff attempts to create a genuine issue of material fact by claiming that C/O Bernal beat him

for no reason.  (*See* Pl.'s Compl. at 8.)  However, Plaintiff's argument fails because his

allegation that he was beat for no reason is not corroborated by any other testimony or other

persuasive evidence.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.

2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is

'uncorroborated and self-serving' testimony") (citations omitted).  In contrast, Defendants have

submitted incident reports that all consistently state that Plaintiff was resisting.

In addition, the facts show that Defendant Diaz sprayed Plaintiff with one shot of O.C.

spray to subdue Plaintiff when he was biting C/O Bernal.  (*See* Cobb Decl. Ex. E by Diaz at 18;

*See* Pl.'s Compl. at 7.)  The Court of Appeal for the Ninth Circuit has held that in a prison, tear

gas may legitimately be used in small quantities to prevent small disturbances from becoming

dangerous to other inmates or personnel.  *See Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir.

1979); *see also Clement v. Gomez*, 298 F.3d 898. 903-04 (9th Cir. 2002) (holding that two bursts

of pepper spray to stop fighting in a cell was not considered excessive force and did not violate

prisoners' Eighth Amendment rights).  Although Plaintiff does not discuss whether he bit C/O

Bernal in his briefing papers, Plaintiff admits to biting a C/O in one of the exhibits he attached to

his Opposition brief.  Plaintiff submitted a Rules Violation Report which reports that when

Plaintiff pleaded not guilty to resisting staff and battery, he stated, " '[a]n arm was across my

throat and I had to bite to breathe.' "  (Pl.'s Opp'n Ex. L at 8.)  In addition, medical reports after

the incident show C/O Bernal was treated for what appeared to be a human bite.  (*See* Cobb

Decl. Ex. M at 30).  Thus, Plaintiff's version of the events do not contradict, but rather supports

the fact that Defendant Diaz sprayed Plaintiff with O.C. spray to stop his biting of O/C Bernal.

In response to Defendants' argument that force was needed to restrain Plaintiff, Plaintiff

argues that he was found not guilty by the prison for resisting officers and battery.  (*See* Pl.'s

Opp'n at 4.)  However, Plaintiff's argument fails because Correctional Lieutenant W.F. Steele in

the Rules Violation Report found Plaintiff not guilty for reasons not related to whether he actually resisted and committed battery. (*See* Pl.'s Opp'n Ex. L.)  Rather, Correctional Lieutenant Steele based his decision on Plaintiff not having taken his medication.  Specifically, Correctional Lieutenant Steele concluded "this incident was the result of Inmate WILKINS' mental health condition, in that he was not taking his prescribed medications." (*Id.* at 7.)  Thus, Plaintiff has not offered evidence to demonstrate that there is an issue of material fact as to the need for force.

Plaintiff also does not create a genuine issue of material fact by referencing a decision by the Superior Court of California in which prosecutors decided to not pursue Defendants' complaints of battery against Plaintiff. (*See* Pl.'s Opp'n Ex. H.)  In order to show that force was needed, prison officials are not required to produce evidence rising to the level required to hold a prisoner liable for battery in a court of law.  Rather, the court must determine whether in making a decision under pressure and with haste, the facts viewed in the light most favorable to Plaintiff show that Defendants saw a need for force.  *See Hudson*, 503 U.S. at 6.  Incident reports and reviews of the incident all consistently state that Defendants saw a need for force because Plaintiff was resisting the Officers and was biting C/O Bernal.

Even viewing inferences in Plaintiff's favor, the evidence shows that there was a need for force because Plaintiff was resisting Defendants.  Thus, the Court **FINDS** the factor of need for force weighs against Plaintiff.

### 3. Relationship Between Need for Force & Force Used

"Whether the disturbance is a riot or a lesser disruption, correction officers must balance the need to 'maintain or restore discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6.  In analyzing the relationship between the need for force and the force used, the *Whitley* Court has emphasized that simple overreaction by an officer is not enough to establish an Eighth Amendment violation:

> [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous

cellblock.  The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

475 U.S. at 319.  Thus, "under the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force."  *Clement,* 298 F.3d at 903.

Here, Plaintiff asserts that there is a triable issue of material fact because "a medical staff member alleged unnecessary and excessive force . . . was utilized by staff during this incident." (Pl.'s Opp'n at 6.)  This statement is taken from first and second reviews of the incident.  (*See* Pl.'s Opp'n Ex. J, Cobb Decl. Ex. P-Q.)  In his "Manager's Review - Second Level, Use of Force Incidents," Associate Warden E.A. Contreras described the steps taken by the prison to investigate the September 17, 2003, incident:

> A videotaped interview was conducted by Lieutenant A. Atrushi due to injuries sustained by Inmate Wilkins, his allegations of unnecessary force utilized by Officer Lymon-Clark and *a staff member's allegations of excessive force utilized by staff during the incident.*  During the interview with Inmate Wilkins he stated he requested [Correctional Treatment Center] Officer Frisch, BMW D. Hosey and SRN (A) Dennis be interviewed.  All three staff were interviewed by Lieutenant Atrushi and confirmed they observed Inmate Wilkins resisting staff which resulted in the use of emergency force to restrain Inmate Wilkins.  All additional reports by staff supported Inmate Wilkins did resist staff's instruction's to cease resisting which resulted in the emergency use of force.

(Cobb Decl. Ex. Q) (emphasis added).  According to this review of the incident, the unidentified staff member's allegations along with Plaintiff's claims of excessive force prompted the videotape interview of Plaintiff to investigate the incident.  However, after reviewing the reports and the interviews conducted, Associate Warden Contreras concluded that staff's actions during the incident were in compliance with policy, procedure and training.  In his "Manager's Review - First Level, Use of Force Incidents," Correctional Captain J. Talbert also made the same finding after stating that an investigation was conducted in part because "a medical staff member

1  alleged unnecessary and excessive force was utilized by staff during this incident."[4]  (*See* Pl.'s

2  Opp'n at 6, 11; Cobb Decl. Ex. P at 37; Cobb Decl. Ex. Q at 48.)

3        Upon a careful review of the record, it appears that the claim of excessive force

4  referenced in the first and second reviews was not actually made by a staff member based on his

5  or her personal knowledge.  No where in the record is there a statement directly made by a

6  medical staff member that Defendants used excessive force, e.g., in an incident report or a

7  medical report.  Rather, the evidence indicates that the statement was made by Plaintiff to RN

8  Belger during his medical exam right after the incident.  (*See* Cobb Decl. Ex. I.)  In particular,

9  under the part of the report entitled "Brief Resume in Patient's Words of the Circumstances of

10  the Injury or Unusual Circumstances," RN Bernal reports that Plaintiff states, "Police beat me

11  up."  (*Id.*)  That the complaint was made by Plaintiff and not a staff member, as discussed further

12  below, accounts for why none of the staff members interviewed at the request of Plaintiff

13  supported his claim that there was excessive force.

14        However, even assuming that the statement was made by a staff member, and not by

15  Plaintiff himself, Plaintiff's argument fails to establish a genuine issue of material fact.  An

16  allegation of excessive force by a staff member is not enough to establish an Eighth Amendment

17  violation because objectively unreasonable force, without more, is not a violation.  *See Clement,*

18  298 F.3d at 903.  Rather, to establish an Eighth Amendment violation, the force used must have

19  been malicious and sadistic for the very purpose of causing harm.  *See id.*  Here, there is no

20  evidence in the record that the staff member asserted that the amount of force used in light of the

21  need for force was malicious and sadistic for the purpose of causing harm.[5]

22

23        [4] Although Defendants discuss this argument by Plaintiff in their Reply brief (Defs.' Reply at 2),

24  the R&R does not address this evidence.  Thus, the Court reviews this evidence *de novo*.

25        [5] Moreover, even if Plaintiff could establish that the force used violated the Eighth Amendment;

26  Defendants are still immune from suit due to qualified immunity.  To avoid qualified immunity, a
   plaintiff must make the following showing:  (1) defendant violated a constitutional right, and (2) the

27  right violated was clearly established such that it would be clear to a reasonable officer that his or her
   conduct was unlawful.  *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).  Here, even if Plaintiff's

28  Eighth Amendment right was violated, he cannot establish that it would be clear to a reasonable officer
   that using excessive force to restrain Plaintiff was unlawful under the circumstances.  Reasonable

Further, the allegation by the staff member does not even create a genuine issue that excessive force was used. The first and second reviews state that the identified staff member merely alleges that unnecessary and excessive force was used, but there is no evidence that the staff member provided any facts to support his or her allegation of excessive force. For example, there is no evidence in the record that the staff member stated Plaintiff was not resisting staff members, that the staff member witnessed Defendants exerting specific acts of excessive force, or that Plaintiff sustained injuries of the type indicating excessive force.

Moreover, the staff member's allegation does not create a genuine issue of material fact because it is not corroborated by any other witnesses, including medical staff members. As stated in the first and second levels of review, in response to the allegation of excessive force by Plaintiff and the unidentified staff member, Correction Lieutenant Atrushi conducted three interviews with staff members whom Plaintiff requested be interviewed, including medical staff members Senior Registered Nurse R. Dennis and Correctional Treatment Center Officer M. Frisch. (Cobb Decl. Ex. P at 37; Cobb Decl. Ex. Q at 48.) However, none of the staff interviewed at the request of Plaintiff gave any statements supporting his allegation of excessive force. To the contrary, they all confirmed that "Inmate Wilkins resist[ed] staff during the escort which resulted in the need for the emergency use of force." (*See id*.) Based on these interviews and the incident reports, which consistently state that force was exerted to restrain Plaintiff as a result of his resistance, it is difficult to disagree with Officer Talbert and Warden Contreras' conclusion that "staff were in compliance with emergency use of force policy and procedures."

The allegation of excessive force by a staff member, without more, does not create a genuine issue of material fact for trial because objectively unreasonable force is not enough to establish an Eighth Amendment violation; rather, the force applied must have been malicious and sadistic. Moreover, no rational trier of fact could find for Plaintiff based on a vague, conclusory statement by an unidentified medical staff member in light of the consistent, multiple

---

officers in Defendants position would exert force in response to a prisoner resisting attempts by officers to restrain him, particularly when that prisoner is biting an officer.

04CV00118-J (WMc)

1   reports that Defendants used force to stop Plaintiff from resisisting.  Accordingly, the Court

2   **FINDS** this element of proportionality weighs against Plaintiff.

3                           **4.  Threat Perceived**

4           Another relevant inquiry for determining whether an Eighth Amendment excessive force

5   violation occurred is "the extent of the threat to the safety of staff and inmates, as reasonably

6   perceived by the responsible officials on the basis of the facts known to them." *Whitley*, 475

7   U.S. at 321.  The *Whitley* Court cautioned that in weighing this factor, Courts should be mindful

8   that "in making and carrying out decisions involving the use of force to restore order in the face

9   of a prison disturbance, prison officials undoubtedly must take into account the very real threats

10  the unrest presents to inmates and prison officials alike, in addition to the possible harms to

11  inmates against whom force might be used." *Whitley*, 475 U.S. at 320.   In addition, "[d]espite

12  the weight of these competing concerns, corrections officers must make their decisions in haste,

13  under pressure, and frequently without the luxury of a second chance." *Hudson*, 503 U.S. at 6

14  (citing *Whitley*, 475 U.S. at 320).

15          Defendants were responding to a threat posed to the security of the prison because it is

16  undisputed that the incident began in the Central Plaza where other inmates were present as the

17  result of a fire alarm evacuation.  (*See* Pl.'s Opp'n at 6.)  Plaintiff admits that the incident began

18  when he was reprimanded by C/O Lyman-Clark to not look at the women in the Plaza, and

19  despite the differing accounts of exactly what Plaintiff said to the C/O, both parties state that

20  Plaintiff verbally disagreed with the instruction he was given.  (*See* Pl.'s Compl. at 7; *see also*

21  Pl.'s Opp'n at 6.)  Thus, the situation was potentially dangerous to the security at RJD facility

22  because with inmates and staff evacuated into the yard where the incident took place,  Plaintiff's

23  disagreement with staff instruction could possibly have incited other inmates.  Thus, Warden

24  Hernandez concluded in his Review of Use of Force report, "[t]he threat also existed that due to

25  other inmates being present on the Plaza . . . they might become involved, escalating the

26  situation to a seriously dangerous level."  (Cobb Decl. Ex. R at 39.)  Therefore, the Court

27  **FINDS** that this factor weighs in favor of Defendants because they reasonably perceived a threat

28  to prison security.

18                                                  04CV00118-J (WMc)

### 5.  Efforts to Temper Force

During the course of the incident, officers increased the amount of force they used in response to Plaintiff's resistance.  All four reviews of the incident concluded that Defendants took reasonable steps to minimize the need for force and the level of force.  (*See* Cobb Decl. Exs. O-R.)  When C/O Plaintiff began to physically struggle with C/O Bernal, C/O Bernal and others repeatedly warned Plaintiff to stop resisting.  (*See* Cobb Decl. Ex. G at 21-22.)  Plaintiff ignored the officers' warnings, and continued to struggle; Plaintiff even admits that he bit C/O Bernal.  (*See* Pl.'s Opp'n Ex. L at 8.)  Multiple other C/Os approached to quell the struggle, using non-deadly force by holding Plaintiff down and trying to put shackles on his legs.  (*See* Cobb Decl. Ex. B.)  Once C/O Bernal shouted out that Plaintiff was biting him, C/O Diaz administered a one second burst of O.C. spray in Plaintiff's face.  (*See* Cobb Decl. Ex. E.) Moreover, after Plaintiff was sprayed once, C/O Diaz did not spray Plaintiff again at C/O Lynman-Clark's request.  (*See* Cobb Decl. Ex. G at 24.)  Under the circumstances, the C/Os made an effort to temper the amount of force they used in response to Plaintiff's resistance. Thus, the Court **FINDS** this factor weighs in Defendants' favor.

In conclusion, four out of five of the *Hudson* factors weigh in Defendants' favor.  Thus, the evidence submitted and the facts taken in the light most favorable to Plaintiff show that the Officers did not act maliciously and sadistically for the very purpose of causing him harm.  For the reasons set forth above, the Court **ADOPTS** the R&R's recommendation and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's excessive force claim.

### B.  Eighth Amendment Inadequate Medical Care Claim

Plaintiff also alleges that prison officials violated his Eighth Amendment rights by delaying in providing or denying him medical care.  Specifically, Plaintiff claims that a doctor did not evaluate him or take x-rays of him during the three months he was in administrative segregation.  (*See* Pl.'s Compl. at 8.)

The government has an obligation under the Eighth Amendment to provide medical care to those whom it punishes by incarceration.  *See Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1967).  "A correctional officer's deliberate

1    indifference to a prisoner's serious illness or injury" violates the Eighth Amendment ban against

2    cruel and unusual punishment.  *Estelle*, 429 U.S. at 105.  The plaintiff inmate must demonstrate

3    that he or she was confined under conditions posing a risk of objectively, sufficiently serious

4    harm that the officials had a culpable state of mind in denying the proper medical care.  *See*

5    *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted).  "Prison

6    officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny,

7    delay, or intentionally interfere with medical treatment . . . [m]ere negligence in diagnosing or

8    treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

9    rights."  *Lopez*, 203 F.3d at 1131 (quoting *Estelle*, 429 U.S. at 104).

10        Courts have interpreted serious medical needs to amount to the "existence of an injury

11   that a reasonable doctor or patient would find important and worthy of comment or treatment;

12   the presence of a medical condition that significantly affects an individual's daily activities; or

13   the existence of chronic and substantial pain."  *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th

14   Cir. 1992) *overruled on other grounds by WMX Techs., Inc. V. Miller*, 104 F.3d 1133 (9th Cir.

15   1997) (*en banc*); *see also Lopez v. Smith*, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (*en banc*).

16        When the alleged indifference to the inmates medical needs is based on delay, the Eighth

17   Amendment is not violated unless the evidence suggests the delay was harmful.  *See McGuckin*

18   *v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992); *see also Hallet v. Morgan*, 287 F.3d 1193, 1206

19   (9th Cir. 2002) (The Eighth Amendment is only violated if "delays occurred to a patient with

20   problems so severe that delays would cause significant harm that Defendants should have known

21   . . . .")

22        Here, the evidence suggests that there was no denial or delay of medical care.  Far from

23   "deliberate indifference" to Plaintiff's medical needs, the medical evaluations conducted

24   immediately after the incident and the follow-ups until the symptoms subsided show that

25   Plaintiff was treated regularly and his medical complaints were addressed.  Authenticated

26   medical records document submitted by Defendants demonstrate that Plaintiff was taken to the

27   CTC immediately after the incident for medical evaluation and treatment.  (*See* Cobb Decl. Ex.

28   I.)  In fact, an RN evaluated Plaintiff directly after the incident and stated that Plaintiff's injuries

were minor and his prognosis was "good."  (Cobb Decl. Ex. I at 26.)  Plaintiff also received

check ups for his complaints of headaches on September 26, 2003, October 6, 2003, October 9,

2003, and November 7, 2003.  (*See* R&R at 14; German Decl. Ex. B at 12, 14-15.)  Thus, the

Court agrees with the Magistrate Judge and finds no evidence showing that Defendants acted

with deliberate indifference towards Plaintiff's medical needs.  For the reasons stated above, the

Court **ADOPTS** the R&R's recommendation and **GRANTS** Defendants' Motion for Summary

Judgment as to Plaintiff's inadequate medical care claim.

### C. Due Process Claim Regarding Grievance Procedure

Plaintiff also alleges that his due process rights were violated because "[the prison] has

not answered [his] 602 inmate appeals regarding the incident and th[e]y are way overdue."  (Pl.'s

Compl. at 8.)  Defendants counter that Plaintiff is not entitled to relief because prisoners have no

due process interest in a particular grievance procedure.  (Defs.' Mem. Supp. Mot. for Summ. J.

at 13.)

The Due Process Clause protects against the deprivation of liberty without due process of

law.  *See Wolf v. McDonald*, 418 U.S. 539, 556 (1974).  To determine whether a due process

violation has occurred, a court engages in a two-step analysis.  First, a court looks to whether the

person possesses a liberty interest with which the state has interfered.  *See Sandin v. Conner*, 515

U.S. 472, 474 (1995).  Second, if the state has interfered with a liberty interest, a court looks to

whether this interference was accomplished by sufficient procedural and evidentiary safeguards.

*See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *see also Zimmerlee v. Keeney*,

831 F.2d 183, 186 (9th Cir. 1987).

Liberty interests may arise from the Constitution or from state law.  *See Wilkinson v.*

*Austin*, 125 S.Ct. 2384, 2393 (2005).  The Constitution itself does not confer on prisoners a

liberty interest in avoiding "more adverse conditions of confinement."  *Id.*; *see also Rizzo v.*

*Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) ("An inmate's liberty interests are sufficiently

extinguished by his conviction so that the state may change his place of confinement even

though the degree of confinement may be different and prison life may be more disagreeable in

1   one institution than in another.") (citation omitted).  However, a prisoner may have a liberty

2   interest pursuant to state law.  *See Sandin*, 515 U.S. at 481-84.

3        Under state law, the existence of a liberty interest created by prison regulations is

4   determined by focusing on the nature of the deprivation.  *See id.*  Such interests are limited to

5   freedom from restraint which "imposes atypical and significant hardship on the inmate in

6   relation to the ordinary incidents of prison life."  *Id.* at 484.  In *Sandin*, the Court concluded that

7   a prisoner had no liberty interest against a 30-day assignment to segregated confinement because

8   the assignment did not "present a dramatic departure from the basic conditions of [the inmate's]

9   sentence."  In contrast, in *Wilkinson*, the Court held that indefinite placement of an inmate in

10  Supermax prison imposed an atypical and significant hardship on inmates in relation to the

11  ordinary incidents of prison life because it prohibited almost all human contact, required

12  constant lighting, allowed exercise for only one hour per day, was an indefinite placement, and

13  disqualified an otherwise eligible inmate from parole.  *See Wilkinson*, 545 U.S. at 209.

14       Here, Plaintiff's three month placement in administrative segregation is more similar to

15  the 30-day administrative segregation that was held to not be a protected liberty interest in

16  *Sandin* than the indefinite Supermax placement in *Wilkinson*.  Moreover, unlike *Wilkinson*,

17  Plaintiff has failed to present any evidence that the conditions of confinement in administrative

18  segregation imposed an "atypical and significant hardship."  *See Sandin*, 515 U.S. at 484.  Thus,

19  Plaintiff has not shown that he has a protected liberty interest in not being held in administrative

20  segregation for three months.

21       Moreover, even if Plaintiff has a protected liberty interest, he cannot meet the second

22  factor required for a due process violation because he received due process for both the charges

23  against him and his claims against Defendants.  Regarding the charges against Plaintiff for

24  battery, he was afforded a hearing as a result of the internal investigation and appeared before

25  the Institutional Classification Committee (ICC).  (S*ee* Pl.'s Opp'n at 4, Ex. G).  A mental health

26  report also was conducted to determine if his mental health conditions caused his behavior

27  during the altercation.  (*See* Pl.'s Opp'n Ex. C.)  As a result of the process he was afforded, the

28  Rules Violation report found Plaintiff not guilty of battery based on a mental health report that

1   showed "the incident was a result of [Plaintiff's] mental condition . . . in that he was not taking

2   his prescribed medications."  (Pl.'s Opp'n Ex. L.)

3       Contrary to Plaintiff's assertions in his Complaint, Plaintiff also was afforded due process

4   because his CDC 602 Inmate Appeals, in which he sought relief for Defendants allegedly having

5   assaulting him, were reviewed by the prison.  Exhibits that Plaintiff attached to his Opposition

6   show that Plaintiff received four reviews of his complaints, including an initial review by the

7   Watch Commander, two Manager's Level reviews, and a Director's Level Decision.  (*See* Cobb

8   Decl. Exs. O-R; Pl.'s Opp'n Ex. F.)  In his Director's Level Decision, Chief N. Grannis denied

9   Plaintiff's appeal after having reviewed the documentation Plaintiff submitted and finding that

10  "[t]he appellate has failed to provide any new or compelling information that would warrant a

11  modification of the decision reached by the institution."  (Pl.'s Opp'n Ex. F. at 1.)  Plaintiff

12  himself even admits that he received these reviews in response to his 602 Complaints.  In

13  arguing that he exhausted all his administrative remedies, Plaintiff admits in his Opposition that

14  he "use[d] the grievances all the way up to the Director's level appeal decision."  (Pl.'s Opp'n at

15  12.)  Although Plaintiff may disagree with Chief Grannis' decision to not grant him relief on

16  appeal, the evidence shows that Plaintiff did receive due process for his grievances against

17  Defendants.

18      Thus, Plaintiff has not presented any evidence showing that the inmate grievance process

19  violated his due process rights.  Accordingly, the Court **ADOPTS** the R&R's recommendation

20  and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's due process claim.

21      ***D.  Qualified Immunity***

22      Section 1983 claims against government officials may be subject to the affirmative

23  defense of qualified immunity.  *See Harlow Fitzgerald*, 457 U.S. 800, 815 (1982).  Qualified

24  immunity ensures that public officials who carry out discretionary executive or administrative

25  functions are protected from personal monetary liability so long as their actions do not violate

26  "federal statutory or constitutional rights of which a reasonable person would have known."  *Id.*

27  at 818.  A correctional officer is not entitled to qualified immunity where (1) "the facts alleged

28  show that the officer's conduct violated a constitutional right," and (2) "the constitutional right

1   in question was clearly established such that 'it would be clear to a reasonable officer that his

2   conduct was unlawful in the situation he confronted.' " *Martinez v. Stanford*, 323 F.3d 1178,

3   1182 (9th Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).

4        Here, because the Court agrees with the R&R's finding that there is no triable issues of

5   fact regarding Plaintiff's Eighth Amendment and Due Process clams, the Court need not move to

6   the second step of determining whether the constitutional rights in question were clearly

7   established. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). Thus, the Court

8   **FINDS** that qualified immunity applies.

9        *E. Dismissal of Claims Against Warden Hernandez*

10        In opposing Defendants' argument on summary judgment that Warden Hernandez should

11   dismissed, Plaintiff states "Warden Hernandez is over his C/Os and there training 100% See

12   Exhibit S it will show he is over there training so there for he is responsible for them . . ." (Pl.'s

13   Opp'n at 8.) Plaintiff's Exhibit S is a memorandum for training C/Os to use a "Monandnock

14   Expandable Baton (MEB)." (Pl.'s Opp'n Ex. S.) Thus, Plaintiff is arguing that because Warden

15   Hernandez signed the memorandum requiring that all staff attend the training (*see* Pl.'s Opp'n

16   Ex. S at 5), Warden Hernandez is responsible for the C/Os' conduct in allegedly beating

17   Plaintiff. In response, Defendants argue that *respondeat superior* is not a basis for § 1983 relief.

18        The R&R correctly examined liability for a supervisor under § 1983, which requires "a

19   showing of personal participation by the defendant." *Fayle v. Stapley*, 607 F.2d 858, 862 (9th

20   Cir. 1979). A supervisor is only liable for constitutional violations of his or her subordinates if

21   he or she ordered the violations or knew of the violations and failed to intercept. *See Ybarra v.*

22   *Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).

23        Here, Plaintiff sets forth no facts to show that Warden Hernandez ordered the Officers

24   conduct against Plaintiff or knew of the conduct and failed to intercept. While the memo

25   Plaintiff provides may show Warden Hernandez instructed Officers on how to use the

26   expandable baton, Plaintiff does not allege that Officers used a baton during the incident. In

27   addition, the MEB memo is dated September 23, 2005, over two years after the September 17,

28   2003, incident that gave rise to Plaintiff's lawsuit. Thus, the Court **ADOPTS** the Magistrate

04CV00118-J (WMc)

1   Judge's R&R recommendation, and **GRANTS** Defendants' Motion for Summary Judgment as to

2   Plaintiff's claim against Warden Hernandez.

3   ### F. Dismissal of Claims Against Officer Ramirez

4   In his Complaint, Plaintiff makes a disturbing allegation that C/O Ramirez assaulted him

5   after he was taken to CTC in handcuffs directly after the incident.  (*See* Pl.'s Compl. at 7.)

6   Defendants argue that Plaintiff's claims against C/O Ramirez should be dismissed because

7   "there is no indication that Ramirez was in any way involved in any of the incidents giving rise

8   to Plaintiff's complaint . . ."  (Defs.' Mem. Supp. Mot. for Summ. J. at 13.)

9   It is well-settled law that to avoid summary judgment, the opposing party cannot rely

10   solely on conclusory allegations.  *See Berg v. Kinchole*, 794 F.2d 457, 459 (9th Cir. 1986).

11   "Where the record taken as a whole could not lead a rational trier of fact to find for the

12   nonmoving party, there is no 'genuine issue for trial.' "  *Id.* at 587 (citing *First Nat'l Bank of*

13   *Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

14   Plaintiff's claim that C/O Ramirez assaulted him when he was in handcuffs, if true, may

15   be ground for an Eighth Amendment claim of excessive force.  *See Hope v. Pelzer*, 536 U.S.

16   730, 737 (2002) ("[a]mong 'unnecessary and wanton' inflictions of pain are those that are

17   'totally without penological justification.' ")  However, Defendants have met their burden of

18   establishing that there is no genuine issue of material fact that C/O Ramirez was not involved in

19   the incident because as they point out, none of the incident reports implicate or even mention

20   C/O Ramirez.  In fact, the incident reports state that it was C/O Hobbs, not C/O Ramirez that

21   escorted Plaintiff to CTC.  (*See* Cobb Decl. Exs. A, B, D, H.)  The burden then shifts to Plaintiff

22   to establish that there is a genuine issue as to whether C/O Ramirez beat him.  The only evidence

23   Plaintiff asserts to support his claim are medical records in which he complained of headaches.

24   However, Plaintiff has provided no evidence indicating that C/O Ramirez caused his headaches.

25   Moreover, although Plaintiff complained of headaches, none of the medical reports found that

26   Plaintiff sustained any head injuries from the incident.

27   Thus, Plaintiff has failed to provide any evidence or to provide specific facts that support

28   his bare allegation against C/O Ramirez.  (*See generally* Pl.'s Compl.; Pl.'s Opp'n.)  The Court

25

1  agrees with the R&R and **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's

2  claim against C/O Ramirez.

3

4  **II.  Defendants' Motion to Strike**

5          In conjunction with their Motion for Summary Judgment, Defendants also filed a Motion

6  to Strike Plaintiff's prayer for punitive damages on the grounds that there is no evidence that

7  Defendants acted with evil intent.  (*See* Defs.' Mot. for Summ. J at 15.)

8          Although the Magistrate Judge in the R&R advises granting Defendants' Motion to

9  Strike, the Court declines to adopt this recommendation.  Rather, the Court **DENIES without**

10 **prejudice** Defendant' Motion to Strike on mootness grounds because the Court has granted

11 Defendants' Motion for Summary Judgment as to all of Plaintiff's claims.

12

13 **III.  Defendants' Request for Judicial Notice**

14         On August 31, 2005, Defendants filed a Request for Judicial Notice in Support of their

15 Motion for Summary Judgment ("Request"). [Doc. No. 22.]  Defendants request that the "Court

16 take judicial notice of the complete files and records in this action," "the exhibits to the

17 Declarations of Michael G. German and Lt. R. Cobb" as well as "the administrative and judicial

18 records of the state of California supplied therein . . . ."  (Defs.' Req. for Judicial Notice at 1.)

19 Plaintiff has not filed an Objection to Defendants' Request.

20         As the R&R correctly stated, a party may request judicial notice of certain matters in

21 connection with a motion for summary judgment.  *See* Fed. R. Evid. 201(b).  Judicial notice

22 constitutes evidence of the matters noted.  *See id.*  A court may take notice of a fact that is "not

23 subject to reasonable dispute in that it is either (1) generally known within the territorial

24 jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

25 sources whose accuracy cannot be questioned."  Fed. R. Evid. 201(b); *see also Parrino v. FHP,*

26 *Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

27         As to Defendants' Request regarding the record submitted in support of their Motion for

28 Summary Judgment, the request is over broad because the records are neither generally known to

1    the Court or capable of easy corroboration.  The documents consist mostly of medical reports

2    and incident reports completed by prison staff, which are not readily known to the Court.

3    Likewise, the Court cannot easily confirm the truth or accuracy of the reports.

4         However, on a motion for summary judgment, a court may consider "affidavits or

5    declarations of persons with personal knowledge through whom they could be introduced at

6    trial." *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  Thus, a court need

7    not take judicial notice of declarations in order to consider them on a motion for summary

8    judgment.

9         Here, the declarations Defendants submitted by Michael German and Lt. Robert Cobb are

10   based on personal knowledge, so they may be properly considered by the Court even though

11   they do not warrant judicial notice.  Michael German, Deputy Attorney General and counsel for

12   Defendants, submitted a declaration in support of Exhibits A and B. [Doc. No. 21.]  Exhibit A

13   contains abstracts of judgments against Plaintiff, and Exhibit B consists of excerpts from

14   Plaintiff's medical records.  (*See* German Decl. at 1.)  As Deputy Attorney General, Mr. German

15   has knowledge of the judgments against Plaintiff to authenticate documents provided in Exhibit

16   A.  Additionally, as a RJD employee working in the medical records department, Rebecca Solis,

17   has knowledge of the medical records to attest that they are correct copies from Plaintiff's

18   medical file.  (*See* German Decl. Exh B at 5.)

19        Lt. Cobb, Litigation Coordinator at RJD, also submitted a declaration in support of

20   Exhibits A through R.  [Doc. No. 23.]  Exhibits A though R consist of crime/incident reports,

21   medical reports of injury or unusual occurrence, and incident review forms regarding

22   crime/incidents that occurred at RJD.  (*See* Cobb Decl. at 1.)  As a Litigation Coordinator, Lt.

23   Cobb has personal knowledge of the preparation and maintenance of these documents, and has

24   affirmed the documents were true copies of the originals.  (*See* Cobb Decl. at 1-2.)  Thus, both

25   Mr. German and Lt. Cobb's declarations are admissible for consideration on a summary

26   judgment motion despite the fact that they cannot be judicially noticed.

27        For the reasons stated above, the Court **ADOPTS** the R&R's recommendation and

28   **DENIES** Defendants' Request for Judicial Notice.

04CV00118-J (WMc)

*Conclusion*

In conclusion, the Court (1) **ADOPTS IN PART** the R&R, (2) **GRANTS** Defendants'
Motion for Summary Judgment, (3) **DENIES without prejudice** Defendants' Motion to Strike
Plaintiff's claim for punitive damages, (4) **DENIES** Defendants' Request for Judicial Notice,
and (5) **CONSTRUES** Plaintiff's "Motion to dismiss summary judgment" as Plaintiff's
Opposition to summary judgment.


   **IT IS SO ORDERED.**


DATED:  October 2, 2006

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge


cc:  Magistrate Judge William McCurine, Jr.

   All Parties

28